Argued and submitted June 24, reversed and remanded
for further proceedings August 24, 1981

SCHIMSCHOK,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

(No. 80-P-2836, CA 19983)

633 P2d 9

Peter E. Baer, Gresham, argued the cause and filed the brief for petitioner.

James C. Rhodes, Assistant Attorney General, argued the cause for respondent Employment Division. With him

on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

James S. Keller, San Antonio, Texas, waived appearance for respondent Stanley Smith Security, Inc.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioner appeals from a decision of the Employment Appeals Board disqualifying him from unemployment benefits for an eight week period pursuant to ORS 657.176(2)(c).[1] The Board found that the petitioner voluntarily left work without good cause. Because we find that the employer-employe relationship considered by the Board was not the petitioner's last employment, we reverse the Board.

On August 29, 1980, petitioner went to work for Stanley Smith Security, Inc., as a security guard. At the time he began work with Stanley Smith, he was on furlough or terminal leave from the Army. On September 2, petitioner notified Stanley Smith of his intention to quit his job, indicating that he was concerned about his safety on the job and was dissatisfied with the low pay and irregular hours. His last day of work for Stanley Smith was on September 12. On September 15 he was discharged from the Army.

The Employment Division denied petitioner's claim on the ground that he voluntarily left work at Stanley Smith without good cause. Petitioner requested a hearing, contending that the Army, not Stanley Smith, was his

---

[1] ORS 657.176 provides, in pertinent part, that:

"* * * * *

"(2) If the authorized representative designated by the assistant director finds:

"* * * * *

"(c) The individual voluntarily left work without good cause, or * * *

"the individaul shall be disqualified from the receipt of benefits until he has performed service for which remuneration is received equal to or in excess of his weekly benefit amount in four separate weeks subsequent to the week in which the act causing the disqualification occurred.

"* * * * *

"(5)(a) Notwithstanding the provisions of subsection (2) and (3) of this section, if an individual who has been disqualified under these subsections establishes to the satisfaction of the assistant director that he has, in not less than eight separate weeks, subsequent to the week in which the cause for disqualification occurred, been able to work, available for work, and been actively seeking and unable to obtain suitable work, and was registered for work, and continued to report at an employment office as provided in paragraphs (a), (b) and (f) of subsection (1) of ORS 657.155, the assistant director in that event may find him eligible for benefits subsequent to such eight weeks."

last employer. Alternatively, he claimed that his job with Stanley Smith was unsuitable because it was unsafe. The referee affirmed the decision of the Employment Division. The only matter discussed by the referee was whether or not petitioner left his job as a security guard for good cause. The referee failed to acknowledge, in any manner, the fact that petitioner was still in the Army at the time he quit his job with Stanley Smith. The Board affirmed the referee's decision without opinion.

On appeal, petitioner raises a number of assignments of error. Because we agree with petitioner's contention that the Army was his last employer and, thus, that that employment was the relevant employer-employe relationship on which to base a determintion of petitioner's eligibility for unemployment benefits, it is not necessary for us to discuss petitioner's other claims.

■  In *Gollender v. Morgan,* 17 Or App 104, 520 P2d 453 (1974), the petitioner was disqualified from receiving unemployment benefits because he was receiving compensation, although not performing any services, from his employer during the relevant time period. The petitioner in that case was a professor. His employment contract specified that his appointment was for the academic year, September 1, 1972, through May 31, 1973, but that his salary was to be paid in 12 installments. Petitioner's contract was not renewed for the next academic year. After petitioner's official duties ended on May 31 he filed a claim for unemployment benefits. That claim was denied. On appeal, we upheld the Employment Appeals Board's denial of petitioner's claim, stating that:

"* * * [P]etitioner's eligibility is determined not by when his teaching and research duties ended but by the terms of his employment contract with reference to when petitioner would cease receiving remuneration from his former employer for services performed. * * *

"Petitioner's status during the three-months' period following the close of the academic year is analogous to that of an employe who is on a paid vacation or paid terminal leave. The authorities are legion that an employe who is on vacation or terminal leave and receiving compensation by way of vacation pay or terminal leave pay is ineligible for unemployment compensation during such period." *Id.,* at 108-109.

We concluded that:

> "* * * during a period such as we are dealing with here, the employe, although not actually working, is deemed not to be 'unemployed' within the meaning of our unemployment compensation law and is disqualified from receiving unemployment compensation benefits." *Id.,* at 111.

The rationale of *Gollender* is applicable to this case. At the time petitioner quit his job with Stanley Smith he was still in the Army. It is true that he was on terminal leave from the Army, not performing any services for it and acting with the knowledge that he would soon be formally discharged from the Army. Nevertheless, the fact remains that he was in the Army's employ and receiving compensation from it. Under *Gollender,* petitioner could not apply for and receive compensation benefits until he was discharged from the Army. Leaving his employment with Stanley Smith did not trigger petitioner's potential eligibility for benefits. Petitioner was still technically employed. Because petitioner was not eligible for unemployment benefits until he was discharged from the Army, it is clear that the Army and not Stanley Smith was his last employer.

Our conclusion is strengthened by OAR 471-30-038(1). That rule provides in pertinent part that:

> "As used in ORS 657.176 * * * the date an individual is separated from work is the date the employer-employe relationship is severed. * * *."

Under federal law providing for the payment of unemployment compensation benefits by states to ex-servicemen, the period of active service is defined as follows:

> " 'Period of active service' means a period of continuous active duty [including active duty for training purposes] in a Federal military agency or agencies, beginning with the date of entry upon active duty and ending on the effective date of the first discharge or release thereafter which is not qualified or conditional." 20 CFR § 614.1(h).

Petitioner's employment relationship with the army did not end until his discharge on September 15. Therefore, the Army was his last employer and the relevant employment relationship to be considered when determining petitioner's eligibility for unemployment benefits. On that basis, the decision of the Board is reversed and this case is remanded

for re-consideration of petitioner's eligibility on the basis of his termination of employment with the Army.[2]

Reversed and remanded for further proceedings.

---

[2] ORS 657.065(1) provides that:

"(1) 'Employment' does not include service performed in the employ of the United States Government or any instrumentality of the United States, except that if the Congress of the United States permits states to require any instrumentalities of the United States to make payments into an unemployment fund under a state unemployment insurance law, then, to the extent permitted by Congress, and after the date such permission becomes effective, this chapter shall be effective as to such instrumentalities and as to services performed for such instrumentalties in the same manner, to the same extent and on the same terms as to all other employers, employing units, individuals and services. However, if this state is not certified by the Secretary of Labor under section 3304(c) of title 26, United States Code, for any year, then the payments required of such instrumentalities with respect to such year shall be deemed to have been erroneously collected within the meaning of ORS 657.510 and shall be refunded by the assistant director from the fund in accordance with ORS 657.510."

See also, 26 USC § 3306(c) 6, § 3308. 5 USC § 8521-8525 establishes a program for the payment of unemployment compensation benefits to ex-servicemen through state employment agencies. See also, 20 CFR 614.1-614.19. 5 USC § 8522 provides, in relevant part, that:

"* * * Federal service and Federal wages not previously assigned shall be assigned to the state * * * in which the claimant first files claim for unemployment compensation after his latest discharge or release from federal service. * * *"

5 USC § 8501-8508 provides for the establishment of agreements between the Secretary of Labor and the states for the payment of unemployment compensation by the state to federal employees. We assume that under federal law and Oregon's compliance with any applicable federal regulations, petitioner may be eligible for unemployment benefits because of his discharge from the Army. The parties do not discuss the procedure for payment of former federal employes in Oregon or indicate whether it is different, in any respect, from the payment of other claimants.